IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Lee Lain,**

      **Plaintiff,**

v.                                    Case No. 13-CV-2201

**BNSF Railway Company,**

      **Defendant.**

### MEMORANDUM & ORDER

Plaintiff Lee Lain filed this negligence action under the Federal Employers' Liability Act against BNSF Railway Company, his employer, for injuries he sustained after he slipped and fell due to an "unnatural accumulation of ice" on a pedestrian pathway at the BNSF Technical Training Center on the campus of Johnson County Community College. This matter is presently before the court on BNSF's motion to exclude the opinions of Frank Burg, a liability expert retained by plaintiff, under Federal Rules of Evidence 702-705 and the rule set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). As will be explained, the motion is granted in part and denied in part.

**I.**      **Governing Standards**

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id*. at 589–93; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to under the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To determine that an expert's opinions are admissible, this court must undertake a two-part analysis: first, the court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the court must determine whether the proposed testimony is "reliable and relevant, in that it will assist the trier of fact." *See Conroy v. Vilsack,* 707 F.3d 1163, 1168 (10th Cir. 2013).

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on a substantial foundation and would tend to aid the trier of fact in its search for the truth. *See Life Wise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). In determining whether the proffered testimony is reliable, the court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert*, 509 U.S. at 592–93. The *Daubert* Court identified testability, peer review and publication, the known or potential rate of error, and general acceptance among the factors relevant to assessing reliability. *See id.* at 592–94. In *Kumho Tire*, however, the Supreme Court emphasized that the *Daubert* factors

are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *See Kumho Tire*, 526 U.S. at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundations. *See id.* The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See id.* at 152.

Plaintiff has retained Frank Burg, a certified safety engineer, to testify in this case about accident prevention, the pertinent standard of care and whether defendant's conduct fell below that standard of care. In its motion to exclude, defendant contends that Mr. Burg lacks sufficient facts, data and knowledge to provide reliable opinions and improperly assumes the truth of "facts" that are disputed; that Mr. Burg's opinions are the product of an "experimental methodology" that is not reliable and is unreliably applied; that Mr. Burg improperly relies on safety standards that are irrelevant and inapplicable to the facts of this case; and that Mr. Burg's testimony is not helpful to the jury. The court addresses each of these challenges in turn.[1]

---

[1] While defendant's brief is dedicated primarily to challenging the reliability of Mr. Burg's opinions, defendant makes a threshold argument, in summary fashion, that Mr. Burg is not qualified to render opinions as to safety standards because he has not received an educational degree awarded by any department of engineering; he obtained his educational degree in psychology; and his home state of Illinois does not recognize professional "safety engineers" with any kind of certification.

This argument is rejected and the court finds that Mr. Burg is qualified to render opinions in this case. As indicated in Mr. Burg's deposition, he is a registered professional safety engineer, licensed by the Commonwealth of Massachusetts, and his credentials are recognized by the American Society of Safety Engineers. In addition, Mr. Burg has more than 40 years of experience in safety and human factors engineering, including 18 years working for OSHA. He has served on the Standards Development Committee for the American Society of Safety Engineers and has served on committees for the American National Standards Institute (ANSI).

**II.     Does Mr. Burg Lack Sufficient Facts or Data to Render his Opinions?**

In its motion to exclude, defendant contends that Mr. Burg's opinions are not reliable because Mr. Burg never visited the campus where the injury occurred; never spoke to any witnesses; never collected data or took field notes; and never performed any "measurements." Defendant further asserts that Mr. Burg's opinions are unreliable because those opinions are based on numerous erroneous factual assumptions—obtained only through plaintiff's deposition—that are disputed by defendant's evidence.  Mr. Burg, for example, asserts that defendant plowed snow behind the dumpsters in the loading dock area; that plaintiff was never advised to use the east exit door to reach the designated smoking area; that the east exit door was equipped with "panic hardware" rendering it unusable; and that plaintiff was required to walk through the loading dock area to reach the smoking area.

The fact that Mr. Burg has never visited the accident site or that his investigation is arguably deficient in other respects does not render his opinions unreliable in the absence of any suggestion that first-hand knowledge of the scene or other data is required.  In other words, defendant has not explained how Mr. Burg's failure to speak to witnesses or failure to take "field notes" has had any effect on his opinions. *See Smith v. Ingersoll-Rand Co*., 214 F.3d 1235, 1244 (10th Cir. 2000) (affirming district court's admission of testimony by human factors engineer and safety expert regarding procedures in developing milling machine, although expert did not have first-hand knowledge of the machine at issue;  witness' testimony was limited to matters within the witness' field of expertise).   Of course, defendant may cross-examine Mr.

Burg on these issues in an effort to demonstrate to the jury the asserted inadequacies of Mr. Burg's investigation and opinions.[2]

With respect to the factual assumptions utilized by Mr. Burg (that snow was plowed against the building; that plaintiff was not told to use the east exit door to reach the smoking area; that panic hardware was on the east exit door; and that plaintiff was required to traverse the loading dock to reach the smoking area), he is entitled to rely on plaintiff's deposition to obtain those factual assumptions even though those facts are vigorously disputed by defendant. *See Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert."). However, Mr. Burg must explain in his testimony to the jury that he is assuming the truth of plaintiff's version of events and that he has not independently determined those facts. In other words, Mr. Burg cannot testify that defendant plowed snow against the building or that defendant failed to tell plaintiff about the east exit door. Rather, Mr. Burg may testify only that "if in fact defendant plowed snow against the building, then" such conduct was unreasonable (or whatever the opinion might be) or "if in fact plaintiff was not told about the east exit, then" defendant failed to utilize appropriate safety practices (or whatever the

---

[2] Defendant also contends that Mr. Burg's opinions are unreliable because Mr. Burg does not even know where plaintiff's fall occurred. According to defendant, Mr. Burg's report repeatedly refers to a "parking lot" when, in fact, the fall occurred in the loading dock area. As Mr. Burg clarified in his deposition, his use of the phrase "parking lot" in his report was intended to refer to the loading dock area where plaintiff fell. The court, then, will not exclude Mr. Burg's opinion on this basis but defendant may cross-examine on this issue if it desires to do so.

opinion might be). *See id.* (expert can explain facts on which his opinion is based without testifying to the truth of those facts).

### III. Is Mr. Burg's Methodology Unreliable and Unreliably Applied?

Defendant asserts that Mr. Burg's opinions should be excluded because his methodology is unreliable and has been unreliably applied to the facts of the case. In support of this argument, defendant states that Mr. Burg's conclusions are based solely on his subjective beliefs as to whether the parties acted reasonably and that his methodology fails under the four factors identified by the *Daubert* Court. The crux of Mr. Burg's testimony is that specific standards exist regarding workplace safety and that, assuming plaintiff's version of the facts, defendant's conduct fell short of satisfying those safety standards in various respects. This aspect of Mr. Burg's testimony is not based on his subjective beliefs and is admissible. The fact that the nature of his testimony is "not scientific," as argued by defendant, or that it is not susceptible to a rigid *Daubert* reliability analysis is of no consequence. *United States v. Medina-Copete,* 757 F.3d 1092, 1101, 1103 (10th Cir. 2014) (*Daubert* factors are not to be applied woodenly in all circumstances; *Kumho Tire* expands *Daubert* to expert testimony that is not purely scientific; the key is whether the expert uses in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field).

### IV. Does Mr. Burg Rely on Irrelevant and Inapplicable Safety Standards?

In his opinion, Mr. Burg asserts that defendant, in failing to provide its employees with a safe, suitable and unobstructed path to the designated smoking area, violated various safety

6

standards such that defendant breached its duty to provide a safe workplace.  Specifically, Mr. Burg opines that defendant's conduct violated the safety standards set forth by the American National Standards Institute (ANSI); fire code standards developed by the National Fire Protection Association (NFPA); OSHA's general duty clause and a specific OSHA regulation; and specific provisions of the International Building Code.  Defendant moves to exclude Mr. Burg's reliance on these standards on the grounds that these standards are irrelevant and inapplicable.[3]

*A.  Alleged Violation of Fire Code*

In his deposition, Mr. Burg testified that defendant's conduct violates the National Fire Protection Association's Life Safety Code which, according to Mr. Burg, requires defendant to

---

[3] In the heading of this particular section of its memorandum in support of the motion to exclude, defendant also states that Mr. Burg's opinions regarding these safety standards are "legal conclusions" and "confusing." Defendant does not address or pursue these additional assertions in any respect in its memorandum and the court, then, declines to address them here.

Similarly, defendant references the ANSI standards in the heading but does not address ANSI in its brief.  The court, then, need not consider at this juncture whether Mr. Burg's reliance on the safety standards set forth by ANSI is appropriate but notes that several courts have deemed such testimony admissible.  *See Paul v. ASTEC Indus., Inc.*, 25 Fed. Appx. 623 (9th Cir. 2002) (district court properly allowed expert to testify as to product defect where expert's methodology included application of ANSI provisions to his observations); *Cospelich v. Hurst Boiler & Welding Co.*, 2009 WL 8547607, at *3 (S.D. Miss. 2009) (expert testimony as to ANSI standards was admissible to show reasonableness of defendant's actions or whether those actions were consistent with industry standards); *Cunningham v. District of Columbia Sports and Entertainment Comm'n*, 2005 WL 4898867, at *9 (D.D.C. 2005) (expert could properly compare defendant's conduct with ANSI standards; defendant free to argue that ANSI standards do not define applicable standard of care or that deviation was not cause of injury); *Miller v. Chicago & N.W. Transp. Co.*, 925 F. Supp. 583, 590-91 (N.D. Ill. 1996) (expert retained by plaintiff asserting negligence claims under FELA could testify about whether railroad complied with safety recommendations published by ANSI).

provide "free and unobstructed egress from all parts of the building" at all times. Defendant moves to exclude any reference to the Fire Code on the grounds that, among other things, plaintiff's claim in this case does not concern an attempt to exit a burning building such that the Fire Code simply does not apply to the facts presented here. While plaintiff responds to other arguments made by defendant regarding the applicability of the Fire Code, he does not address this particular argument in any way. There has been no showing, then, that the Fire Code speaks to whether it is dangerous to plow snow against a building with limited drainage or whether defendant should have treated or removed snow and ice in the parking lot where plaintiff slipped and fell. Similarly, there has been no showing that the Fire Code was intended to prevent the type of injury sustained by plaintiff or, stated another way, that plaintiff's injury result from a condition that the fire code was designed to prevent.

In the absence of such a showing, the court will not permit Mr. Burg to reference the Fire Code in his testimony. *See Kilgore v. Carson Pirie Holdings, Inc.*, 205 Fed. Appx. 367, 370-71 (6th Cir. 2006) (expert retained by plaintiff who fell while descending stationary escalator could not rely on NFPA's fire code to support opinion that stationary escalator is dangerous; NFPA was irrelevant to facts of case); *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5595938, at *4 (S.D. Fla. 2013) (plaintiff's expert could not rely on NFPA's fire code standards in slip-and-fall case; fire code evidence was irrelevant and possibly prejudicial where plaintiff did not allege that injury results from failure to conform with fire safety standards); *see also Elliott v. Food Lion, LLC*, 2014 WL 1404562, at *2 (E.D. Va. 2014) (reliance on purported violations of fire code for negligence per se claim was futile in slip-and-fall case in absence of suggestion that

plaintiff belonged to class of persons meant to be protected by fire code or that injury was the type the fire code was intended to protect against).

### B.     *Alleged Violation of OSHA*

Mr. Burg opines that defendant's conduct violated OSHA's general duty clause, *see* 29 U.S.C. § 654(a), requiring each employer to furnish a place of employment free from recognized hazards, as well as an OSHA regulation requiring employers to ensure that all "places of employment, passageways, storerooms and service rooms" be kept clean and orderly and that all floors be maintained in a clean and dry condition. *See* 29 C.F.R. § 1910.22.  In its motion to exclude, defendant does not address Mr. Burg's reliance on the OSHA regulation, but contends only that OSHA's general duty clause does not apply to this case because it concerns "recognized" hazards and it is undisputed in this case that the ice upon which plaintiff slipped was "invisible."  According to defendant, an invisible hazard "cannot be recognized" and, thus, is not covered by OSHA's general duty clause.  Defendant's argument, however, ignores plaintiff's theory of the case—that is, that defendant's actions caused or contributed to plaintiff's injury (*e.g.*, failure to designate a walkway) and/or caused or contributed to the presence of the invisible ice (*e.g.*, negligent snow removal, failure to inspect and treat the loading dock area). In any event, defendant's argument assumes that OSHA's general duty clause is implicated only when an employer has actual knowledge of a personally recognized hazard—an interpretation that conflicts with the requirement that an employer exercise due diligence to proactively discover legitimate safety concerns and which this court rejects. *See Transportation Ins. Co. v. Citizens Ins. Co.*, 2013 WL 856641, at *5 & n.2 (E.D. Mich. 2013) (expert testified that a

9

"recognized hazard" under OSHA refers to a safety problem that OSHA has officially recognized or a hazard that is generally accepted throughout the industry as a standard or practice that can cause an injury to workers). In the absence of any other argument for exclusion, the motion is denied on this issue. *See Taylor v. TECO Barge Line, Inc.*, 642 F. Supp. 2d 689, 692-93 (W.D. Ky. 2009) (expert could testify as to whether employer violated OSHA's general duty clause as that issue was relevant to whether defendant provided a reasonably safe place to work).

C. *Alleged Violation of International Building Code*

Mr. Burg opines that defendant's conduct violates certain provisions contained in the 2000 edition of the International Building Code. In its motion, defendant contends that this opinion should be excluded because Mr. Burg admitted in his deposition that he was not aware of more recent editions of the International Building Code; he could not explain any differences between the 2000 edition and the more recent editions; and he did not know whether the 2000 International Building Code applied to an incident that occurred in 2011. According to defendant, then, Mr. Burg's reliance on the International Building Code is unreliable and must be excluded. While defendant may properly raise these issues on cross-examination, they do not serve as a basis to exclude Mr. Burg's reliance on the International Building Code in the absence of any evidence or suggestion from defendant that subsequent editions of the International Building Code materially changed the provisions upon which Mr. Burg relies. *Stephan v. Continental Cas. Ins. Co.*, 2003 WL 21032042, at *3 (D.N.J. 2003) (rejecting *Kumho* challenge

that expert had relied on improper edition of book in the absence of any evidence that the edition utilized by expert was inaccurate in any way).

## V. Is Mr. Burg's Testimony Helpful to the Jury?

Finally, defendant, in its reply brief, contends that Mr. Burg does "nothing more than suggest that an ice patch should have been treated" and that a jury does not require expert testimony to draw that conclusion. A review of Mr. Burg's testimony, however, reveals that it will assist the jury in determining significant issues in this case. Specifically, Mr. Burg has knowledge of reasonable and customary safety practices in the industry in light of specific, nationally recognized safety standards. To this extent, then, his testimony will assist the jury in determining the applicable standard of care and in determining whether defendant's conduct complied with that standard of care. This aspect of defendant's motion, then, is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant BNSF Railway Company's motion to exclude the opinions of Frank Burg (doc. 63) is denied in part and granted in part.

**IT IS SO ORDERED.**

Dated this 14th day of November, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

11